OLD SETTLERS CLUB OF MILWAUKEE COUNTY, INC., Appellant, vs. HAUN, Respondent.*

*March 13—April 14, 1944.*

* Motion for rehearing denied, without costs, on June 6, 1944.

*Lyman G. Wheeler* of Milwaukee, for the appellant.

For the respondent there was a brief by *Whyte, Hirschboeck, Minahan & McKinnon* of Milwaukee, and oral argument by *H. C. Hirschboeck.*

WICKHEM, J. Plaintiff is a corporation without capital stock, dividends, or profits to members. Its purposes are reviving old associations, renewing ties of former years, keeping alive the memories of the past, etc. Its officers are a president, first vice-president, second vice-president, secretary, treasurer, three trustees, marshal, financial secretary, historian, and executive committee.

Defendant was one of the three trustees, having been elected to that office in March, 1938. At that time he was president and majority stockholder in H. B. Haun Company, a corporation engaged in buying and selling stocks and bonds on the market. Later he was managing agent for Braun, Monroe & Company engaged in similar business. At the time when Haun assumed his duties as trustee, the club had about $13,500 to invest.

Plaintiff charges that through control of its trustees defendant caused plaintiff to engage in some eighty buying and selling transactions through the Haun Company and Braun, Monroe & Company, in the course of which he realized profits to the extent of $2,380.13. Plaintiff seeks to recover this sum upon the rule set forth in *Ludington v. Patton,* 111 Wis. 208, 239, 86 N. W. 571, as follows:

"No rule is better established than that, if a trustee or a person standing in relations of trust and confidence to another deal with the *cestui que trust* or such other in respect to the subject of such trust, for his own benefit or that of others

whom he represents, serving two persons at the same time, in form, when in contemplation of law he can serve but one loyally, the transaction cannot be upheld if called in question by the *cestui que trust,* unless the trustee is able to prove to the satisfaction of the court by clear and satisfactory evidence that the two were at arm's length in the transaction, that no confidence was reposed in him by the beneficiary, that the bargain was profitable to the beneficiary, and that he was fully informed in regard to the value of the property and the nature of his interest in it."

The trial court was of the view that the transactions in question were with the two stock and bond companies heretofore mentioned; that these companies acted as principals and not as agents in their dealings with plaintiff; that this fact was known to all the trustees; that making the most favorable construction of the facts, namely, that defendant should be treated as a conventional trustee, as in *Ludington v. Patton, supra,* plaintiff simply had a right to rescind the transactions, a step which it never had taken and did not propose to take. The court exonerated defendant from all charges of disloyalty or bad faith.

Plaintiff, on the other hand, claims that regardless of the category into which defendant may be placed, he must be considered to have had representative and fiduciary duties, and that in view of this was under a duty not to take profit or compensation from transactions handled by him for plaintiff.

The rules of law as contended for by plaintiff and defendant are correct. The difficulty arises solely as to their proper application. Plaintiff does not seek to rescind the transactions between it and the stock and bond houses, and it is open to serious doubt whether it could rescind if it so desired. This case is not before the court, however. The question is whether defendant must not return any profit or compensation that he personally has received in these transactions. We are satisfied that his duty so to do is clear and well established. Re-

statement, 1 Trusts, p. 549, sec. 203, thus states the law applicable to trustees:

"The trustee is accountable for any profit made by him through or arising out of the administration of the trust, although the profit does not result from a breach of trust."

Restatement, 2 Agency, p. 870, sec. 388, provides:

"Unless otherwise agreed, an agent who makes a profit in connection with transactions conducted by him on behalf of the principal is under a duty to give such profit to the principal."

Comment:

"*a.* . . . Thus, if the agent receives a bonus from a party with whom he deals on account of the principal, the agent is under a duty to pay this to the principal even though otherwise he has acted with perfect fairness to the principal and violates no duty of loyalty in receiving the amount."

See also *Roller v. Spilmore*, 13 Wis. *26; *Pederson v. Johnson*, 169 Wis. 320, 172 N. W. 723.

The difficulty with plaintiff's case, as we read the record, is that except in one instance, plaintiff has not made any proof that defendant profited personally. In the case of $147.18 received by defendant personally from Braun, Monroe & Company as commissions upon transactions with plaintiff, the proof is clear and plaintiff should be permitted to recover. In the case of the Haun Company, of which plaintiff is a majority stockholder and an officer, and from which he received a salary, there is no such proof. Plaintiff claims that the companies made certain profits on these transactions and proposes that as between plaintiff and defendant, the latter should be considered to have received them, leaving all further questions to be settled between defendant and the companies. But that

would make defendant liable as a matter of law for the profits of these companies, although the contracts out of which the profits were made are unrescinded. The true question is: Did defendant personally get profit or compensation out of these transactions? Plaintiff must prove that he did. It will not do to simply point out that he is a stockholder, or a majority stockholder, or that he got a salary. There is no proof whether the general operations of the Haun Company resulted in profit or loss to the stockholders, whether dividends were received, or whether a portion of these profits was in the dividends. There is no attempt to prove facts justifying disregard of the corporate entity and treatment of the corporation as the *alter ego* of defendant.

There is a great deal of argument in the briefs whether the record shows plaintiff to have made profits out of these deals. As we read the record, its income was somewhat improved and the sale values of its securities somewhat increased, although the amount of increase was not great. However, since plaintiff does not seek to rescind or to recover damages resulting from mismanagement, these facts are unimportant. They might conceivably throw some light upon the loyalty or disloyalty of defendant in these transactions and probably whatever tendency they have is probably to support the trial court's conclusion that defendant was not disloyal. However, even this is immaterial here. Whether the defendant was loyal or disloyal in his dealings, he is bound to make good any profits or outside commissions received by him on account of the transactions. Plaintiff is bound to prove the fact and amount of these profits. There is no claim that defendant disclosed that he stood to profit by commissions or bonuses or that with knowledge of the facts plaintiff consented to his so profiting. This results in the conclusion that plaintiff is entitled to recover commissions received by defendant from the Braun-Monroe Company, and that as to all the rest of plaintiff's claim

218

there is a failure of proof that defendant derived personal profit from the transactions.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for plaintiff in the sum. of $147.18 and costs.