GREGORY and wife, Respondents, v. SELLE, Appellant.

*No. 98. Argued March 27, 1973.—Decided April 20, 1973.*
(Also reported in 206 N. W. 2d 147.)

368

For the appellant there was a brief by *Walther &
Halling*, attorneys, and *David L. Walther* and *Virginia
W. Sperry* of counsel, all of Milwaukee, and oral argu-
ment by *David L. Walther*.

For the respondents there was a brief and oral argu-
ment by *Henry C. Friend* of Milwaukee.

WILKIE, J. Two issues are involved on this appeal:
1. Was there a justifiable breach of contract?
2. Was the sum paid to the second real estate agent
properly included as an element of damages?

### Was the breach justified?

Appellant's first contention is that her refusal to ful-
fill the instant real estate contract was fully justified
by the conduct of the Gregorys. Appellant's principal
argument is that the Gregorys must be held to a higher
standard of conduct than the average person because

Mrs. Gregory is a licensed real estate agent. A licensed real estate broker, appellant urges, enters into a fiduciary relationship "whenever he deals with the public concerning the sale of real estate." Appellant further urges that this relationship need not be contractual in nature but merely devolves upon the existence of a real estate brokerage license.

Supportive of her position, appellant cites several of this court's decisions. None is in point. In *Hilboldt v. Wisconsin Real Estate Brokers' Board,* this court did indeed quote favorably a Florida decision which held that because of the highly specialized nature of the real estate business, a broker's "relation to the public exacts the highest degree of trust and confidence . . . ." [1] Appellant overlooks, however, this court's further elaboration of when such trust and confidence incident to the fiduciary obligation arises:

"Family Service clearly wanted to purchase real estate. Hilboldt was contacted in the first instance because he was a real-estate broker. *When he undertook the task of obtaining real estate for it under the circumstances described in the record he became an agent in his capacity as real-estate broker. As such agent he subjected himself to the fiduciary duties of an agent,* and to the statutory standards of business conduct prescribed by sec. 136.08 (2), Stats." (Emphasis added.) [2]

Thus, in favorably quoting the Florida decision, it is clear that this court did not adopt the reasoning appellant urges the case to stand for. Implicit in its holding is a fundamental distinction between brokers and brokers who are agents. The fiduciary obligations and increased standard of conduct do not devolve upon the mere status

---

[1] (1965), 28 Wis. 2d 474, 485, 486, 137 N. W. 2d 482, citing *Ahern v. Florida Real Estate Comm.* (1942), 149 Fla. 706, 709, 6 So. 2d 857.

[2] *Id.* at page 486.

of a person as a licensed real-estate broker, but rather upon his functioning as an agent.

The remaining cases cited by appellant likewise are not in point.[3] Both stand for the proposition that a fiduciary relationship does not arise until a situation of trust or confidence in a broker exists:

". . . A fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other . . . ."[4]

The clearest explication by this court of the moment a fiduciary relationship and its concomitant duties arise is found in *Nolan v. Wisconsin Real Estate Brokers' Board,* a case involving disciplinary proceedings by the board against several brokers and real estate salesmen.[5] In *Nolan* the court held:

"A real-estate broker owes the duty of a fiduciary to the property owner *for whom he acts as agent.*" (Emphasis added.) [6]

This is also in accord with the Restatement definition of agency.[7]

We conclude therefore that in the instant case Mrs. Gregory, a licensed but inactive real estate agent, cannot be held to the fiduciary duties of an agent who has

---

[3] *Miranovitz v. Gee* (1916), 163 Wis. 246, 157 N. W. 790; *Rusch v. Wald* (1930), 202 Wis. 462, 232 N. W. 875.

[4] *Miranovitz v. Gee, supra,* footnote 3, at page 252.

[5] (1958), 3 Wis. 2d 510, 89 N. W. 2d 317. *See also Degner v. Moncel* (1959), 6 Wis. 2d 163, 166, 93 N. W. 2d 857.

[6] *Nolan v. Wisconsin Real Estate Brokers' Board, supra,* footnote 5, at page 533. *See also: Wisconsin Real Estate Law* (1972), ch. 1, at page 1–3.

[7] Restatement, 1 *Agency* 2d, p. 7, sec. 1, which provides as follows: "(1) Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

undertaken to act for another. Mrs. Selle does not fall within that category of persons who have a right to place trust and confidence in an agent who has assumed to act on their behalf. To hold that appellant occupied such a position would be to hold that real estate agents enter into fiduciary relationships with whomever they come in contact when dealing with real estate. This is not the present law. While sec. 452.10 (2) (c), Stats., arguably authorizes the real estate examining board to suspend or revoke the license of *any* real estate broker or salesman who makes "false promises of a character such as to influence, persuade or induce the seller or purchaser to his injury or damage," [8] regardless of whether or not he is acting on the behalf of another in a fiduciary capacity, it is clear that a fiduciary obligation with its associated increased duties does not arise until one begins to act on another's behalf. The actions of the Gregorys must, therefore, be adjudged in terms of the average person who undertakes to sell his house.

Appellant argues that her breach of contract was justified under the circumstances because Mrs. Gregory failed to disclose her status as a former real estate saleswoman.

This alleged nondisclosure is disputed since Mr. Gregory testified that he was present when his wife did indicate that she had past experience as a real estate saleswoman. Even though the disclosure by Mrs. Gregory of her prior experience as a real estate saleswoman would have been the most forthright thing to do there is no legal duty to do so and we find any failure on her part to make this disclosure insufficient justification for Mrs. Selle's breach of contract.

Appellant also argues that the Gregorys' refusal to permit an appraisal and more extensive examination

---

[8] Sec. 452.10 (2) (c), Stats.

of the home violated the "fiduciary obligation owed Mrs. Selle by Mrs. Gregory" and, as such, is a further justification for appellant's breach of contract. In the first place, the Gregorys were not impressed with the duties of a fiduciary since they neither presumed to act on appellant's behalf nor caused her to place her trust and confidence in them in the capacity of agents. In the second place, the record here reveals that the demand to permit the appraisal and inspection of the Gregory house was not made until November 13, 1970 —seven days after the agreed-upon closing date. The demand was made by appellant's attorney approximately thirteen days after Mrs. Selle telephoned Mr. Gregory and advised him of her decision not to go through with the contract. Of course, the failure to agree to such a demand made after a breach of contract can hardly be considered as justification therefor.

The acceptance of an offer to purchase results in a binding contract.[9] In the instant case the appellant, by her attorney, drafted the offer to purchase after appellant viewed the home on three separate occasions. Nothing in the offer to purchase made the offer dependent upon an appraisal or further inspections. The Gregorys, in accepting the offer, were bound solely by its terms.[10] They were under no further legal obligations to the appellant. Their refusal cannot, therefore, stand as justification for repudiation of this validly executed contract.

The trial court's very complete findings were precisely against appellant in all respects. The court concluded the grounds alleged by Mrs. Selle were "unfounded and insufficient" to excuse her breach. These findings are

[9] *Wisconsin Real Estate Law, supra,* footnote 6, ch. 5, at page 5-1.

[10] *See,* 17 Am. Jur. 2d, *Contracts,* p. 378, sec. 41. *See also:* 1 Williston, *Contracts* (3d ed. 1957), sec. 64, *et seq.*

not contrary to the great weight and clear preponderance of the evidence.[11]

## *The damages.*

Appellant's second contention is that the broker's commission paid to Robert J. Grossman on the second sale ought not to have been included as an element of damages. According to appellant, the Gregorys' listing contract with Sterling Realty, Inc., required that Sterling receive the commission since Mrs. Selle approached the Gregorys during the life of such listing contract. Although Sterling did not, pursuant to the contract, preserve its right to such commission by filing Mrs. Selle's name within twenty-four hours of the expiration of the contract, appellant argues that this is due to the misconduct of the Gregorys.[12] Appellant contends that because of such misconduct the Gregorys ought to be denied the amount they subsequently expended to sell their house.

There is no substance to appellant's contention. Appellant testified that it was the Sterling saleswoman, Mrs. Frank, who sent the appellant to the Gregory residence in the first instance. Although a commission for this action may have been proper had Mrs. Frank filed the name of Mrs. Selle with the Gregorys within the twenty-four hour period specified in the listing contract, she failed to do this and there is no support in the record for the suggestion that such failure in any way was the fault of the Gregorys' lack of forthrightness.

[11] *State ex rel. Isham v. Mullally* (1961), 15 Wis. 2d 249, 255, 112 N. W. 2d 701. *See also: Druml Co. v. Capitol Machinery Sales & Service Co.* (1965), 29 Wis. 2d 95, 98, 138 N. W. 2d 144.

[12] *See Dunn & Stringer Investment Co. v. Krauss* (1953), 264 Wis. 615, 619, 60 N. W. 2d 346.

Furthermore, the argument that the Grossman commission should not be included as an element of damages, assumes that the subsequent necessity for engaging Grossman to procure another purchaser was caused by the wrongful conduct of the Gregorys. The trial court found that the necessity for the second broker was entirely due to appellant's wrongful breach of contract. Where, as here, an unjustified breach of contract has occurred a seller may, at his election, bring an action for his actual damages flowing from such breach.[13] A proper portion of the Gregorys' actual damages flowing from appellant's breach is the commission which was paid to Robert J. Grossman.

*By the Court.*—Judgment affirmed.

[13] *Zimmermann v. Thompson* (1962), 16 Wis. 2d 74, 76, 114 N. W. 2d 116. *See also: Moritz v. Broadfoot* (1967), 35 Wis. 2d 343, 346, 151 N. W. 2d 142.