# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BENJAMIN A. THOMAS, JR. and LINDA KAE FERRIS, Co-Trustees of the Benjamin A. Thomas, Sr. Credit Shelter Testamentary Trust, | No. 52486-4-II |
| Respondents, | |
| vs. | UNPUBLISHED OPINION |
| LANA CHANEY HARMON, and SUNSHINE HARMON, husband and wife, | |
| Appellants. | |

MAXA, J. – Lana and Sunshine Harmon appeal the trial court's order on partial summary judgment in a lawsuit filed by Benjamin Thomas and Linda Ferris as co-trustees of the Benjamin A. Thomas, Sr. Credit Shelter Testamentary Trust (the Trust) relating to certain restrictive covenants applicable to the Harmons' property.

One restrictive covenant required all outbuildings on the Harmons' property to complement or be similar to the house constructed on the property in material, color, and design, including siding and roofing materials. The Harmons' house had hardi-plank style lap siding and an asphalt shingle roof, and a barn they constructed had metal siding and roofing. The trial court ruled as a matter of law that the barn violated the outbuildings restrictive covenant. Another restrictive covenant prohibited temporary structures. The trial court permanently enjoined the

Harmons from constructing future temporary structures on their property. Finally, the trial court awarded attorney fees to the Trust under an attorney fee clause in the covenants.

After the trial court ruled but before judgment was entered, the Harmons abated the alleged violation of the outbuildings covenant by replacing the metal siding and roofing with acceptable materials.

We hold that (1) whether the trial court erred in granting partial summary judgment to the Trust regarding the outbuildings covenant is moot because the Harmons abated the alleged violation, (2) the trial court did not err in permanently enjoining the Harmons from constructing future temporary structures on their property, (3) the trial court erred in awarding attorney fees to the Trust regarding the outbuildings covenant but not the temporary structures covenant, and (4) we decline to consider Sunshine Harmon's liability on the court's judgment because he did not object in the trial court.

Accordingly, we decline to address the trial court's order granting partial summary judgment regarding violation of the outbuildings covenant, and we affirm the trial court's entry of the permanent injunction regarding temporary structures. Regarding attorney fees, we reverse the trial court's award of attorney fees to the Trust regarding enforcement of the outbuildings covenant, but we affirm the trial court's award of attorney fees to the Trust regarding enforcement of the temporary structures covenant. We also award attorney fees to the Trust on appeal for only the enforcement of the temporary structures covenant.

FACTS

*Restrictive Covenants*

Lana Harmon purchased property from the Trust in September 2014. She was married to Sunshine Harmon at the time of the purchase, but she took title as her separate property.

2

The Trustee's Deed conveyed title to the property subject to certain restrictive covenants. The "grantor" under the deed was Thomas and Ferris as co-trustees of the Trust. The covenants benefitted all the lots in the subdivision. The attorney for the Trust drafted these covenants.

Paragraph 3 of the covenants, "Permitted Uses" stated in part: "All outbuildings must compl[e]ment (i.e. be similar to) the house style in material, color and design, which shall include siding and roofing materials." Clerk's Papers (CP) at 76. Paragraph 3 did not expressly prohibit metal siding or roofing on outbuildings.

Paragraph 6, "Temporary Structures," stated: "No shacks, garages, barns or other out buildings [or] structures of a temporary character shall be used on any lot or parcel at any time. All structures must be built on a permanent foundation." CP at 77.

Paragraph 13 of the covenants, "Enforcement," stated:

> The Grantor and/or a majority of owners of the lots within the Benefitted Tracts shall be entitled to bring any suit or action to enforce these Covenants. Should any suit or action instituted by the Grantor or a majority of the owners to enforce any of said reservations, conditions, agreements, covenants and restrictions, or to restrain the violation of any thereof, *after demand for compliance therewith or for the cessation of such violation, and failure to comply with such demand,* then and in either of said events and whether such suit or action be reduced to decree or not, *the parties instituting such suit or action shall be entitled to recover attorney's fees in such suit or action*, in addition to statutory costs and disbursements.

CP at 78-79 (emphasis added).

*Harmons' Use of the Property*

The property was undeveloped at the time of purchase and the Harmons intended to build a home on it. The Harmons moved into a trailer on the property in late September 2014, shortly after the purchase. They eventually finished construction of the home on the property. The home had hardi-plank style lap siding and an asphalt-shingle roof.

About June 2015, the Harmons erected several structures on their property, including a cattle panel with tarp, a dog kennel, a small storage shed, and a greenhouse.

On October 7, an attorney representing Thomas, co-trustee of the Trust, wrote a letter to the Harmons "concerning covenant violations on your property." CP at 130. The letter stated "you have constructed numerous temporary structures and placed a drop box on the property for a long period of time, in violation of the Covenant prohibition against temporary structures." CP at 130. The letter asked the Harmons to "immediately correct any non-conforming use of the property by promptly removing the trailer and temporary structures from the property." CP at 130. The letter threatened legal action if they failed to comply within thirty days of the letter. The Harmons apparently did not reply.

The Harmons began construction of a pole-barn in October. The barn had corrugated sheet metal siding and roofing.

On December 14, Thomas's attorney wrote to the Harmons with a final demand to comply with the covenants. The letter stated that the Harmons had been living in a trailer for longer than the covenants allowed and had constructed numerous temporary structures, including a drop box on the property. The letter stated, "This will be our last attempt to compel compliance with the above-mentioned Covenants. Your failure to comply with this final demand will result in a lawsuit being filed against you." CP at 133. The letter stated that it enclosed a draft complaint, but the complaint is not in the record. The letter concluded, "Please immediately correct any and all non-conforming use of the property by promptly removing the trailer and temporary structures from the property." CP at 134.

Lana Harmon wrote back to the attorney, stating "You need to clarify these said temporary structures in question." CP at 136. Sometime after receiving the demand letter from the Trust, the Harmons removed the cattle panel, storage shed, and greenhouse.

*Trust's Lawsuit Against the Harmons*

In February 2016, the Trust filed a lawsuit against the Harmons, alleging that the Harmons had breached the restrictive covenants by erecting several temporary, noncompliant structures on their property and by constructing a barn with siding and roofing that did not complement the house on their property. The Trust also asserted that in spite of its demands to the Harmons to abide by the restrictive covenants, the Harmons had failed to correct their nonconforming uses of their property.

The Harmons filed an answer to the complaint, representing themselves. Both Lana and Sunshine Harmon signed the answer. The Harmons denied violating the restrictive covenants or failing to correct any nonconforming uses. The Harmons then retained counsel and filed an amended answer. The amended answer continued to name both Lana and Sunshine Harmon as defendants.

The Trust moved for partial summary judgment, arguing that as a matter of law the Harmons had violated the restrictive covenants requiring the siding and roofing materials of outbuildings to be similar to the home on the property and prohibiting temporary structures. The Trust requested a permanent injunction prohibiting the Harmons from constructing temporary structures on their property, ordering them to remove all temporary structures from their property, and ordering the Harmons to remove the metal siding and roofing from the barn and replace them with lap siding and asphalt composite shingles.

The trial court granted the Trust's motion for partial summary judgment. The court enjoined the Harmons from placing temporary structures on their property in the future and gave them 150 days to remove and replace the metal siding and roofing on their barn. If they were unable to do so in 150 days, the Harmons were required to remove the barn.

The Trust later moved to amend the case caption, replacing "John Doe Harmon" with "Sunshine Harmon." CP at 359. The Harmons did not object. The trial court granted the motion to amend the case caption.

In July 2018, the Trust moved for entry of final judgment. The Trust requested an award of attorney fees under paragraph 13 of the restrictive covenants as the "prevailing party." CP at 361. The Harmons objected to the fees and costs as submitted by the Trust, arguing that they were not reasonable. The Harmons did not argue that attorney fees were not recoverable under paragraph 13.

The trial court permanently enjoined the Harmons from erecting temporary structures on their property and noted that the violation of the covenants with respect to the pole-barn's siding and roofing had been abated. The court entered judgment against the Harmons for $26,616 in attorney fees. The Harmons did not argue that liability should not be imposed on Sunshine Harmon.

The Harmons appeal the trial court's order granting partial summary judgment and a permanent injunction, and awarding attorney fees to the Trust.

ANALYSIS

A.    SUMMARY JUDGMENT REGARDING OUTBUILDINGS COVENANT

The Harmons argue that the trial court erred in granting partial summary judgment to the Trust regarding the outbuildings covenant because they presented evidence to create an issue of

material fact whether their barn's siding and roofing material "complemented" or was "similar" to their house. We hold that this issue is moot and decline to consider it.

Before entry of judgment the Harmons abated the alleged violation of the outbuildings covenant by replacing the metal siding and roofing on their barn with materials that were acceptable to the Trust. Both the Harmons and the Trust agree in supplemental briefing that this issue is now moot. We agree.

A case is moot if we cannot provide the relief sought or can no longer provide effective relief. *Randy Reynolds & Assocs., Inc. v. Harmon*, 193 Wn.2d 143, 152, 437 P.3d 677 (2019). As a general rule, we do not consider cases that are moot or present only abstract questions. *4518 S. 256th, LLC v. Karen L. Gibbon, PS*, 195 Wn. App. 423, 433, 382 P.3d 1 (2016).

Here, whether we affirm or reverse the trial court's ruling on the outbuildings covenant makes no difference. The alleged violation has been abated. Therefore, the issue is moot.

The Harmons argue that the outbuildings covenant may be relevant to the trial court's award of attorney fees to the Trust, which they challenge. However, as discussed below, we hold that the Trust is not entitled to recover attorney fees for enforcement of the outbuildings covenant because the Trust never made a demand for compliance with that covenant. Therefore, we reverse the award of attorney fees regardless of whether the trial court erred in ruling that the Harmons violated the outbuildings covenant.

Because the issue is moot, we decline to address whether the trial court erred in granting partial summary judgment to the Trust regarding the outbuildings covenant.

B.        PERMANENT INJUNCTION REGARDING TEMPORARY STRUCTURES

The Harmons argue that the trial court erred in granting the Trust a permanent injunction enjoining the Harmons from placing future temporary structures on their property.  The Harmons claim that a permanent injunction was inappropriate because the Trust provided no evidence that it had a well-grounded fear of an immediate invasion of its rights under the temporary structures covenant.  We disagree.

The purpose of restrictive covenants is "to make residential subdivisions more attractive for residential purposes."  *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 699, 974 P.2d 836 (1999).  They are enforceable by injunctive relief.  *Id.*  A plaintiff seeking injunctive relief must show (1) a clear legal or equitable right, and (2) a well-grounded fear of immediate invasion of that right.  *Id.*  The party is not required to show substantial damage from the violation of a restrictive covenant to enjoin a violation.  *Id.*  We review a trial court's decision to grant an injunction to enforce restrictive covenants for an abuse of discretion.  *Green v. Normandy Park*, 137 Wn. App. 665, 698, 151 P.3d 1038 (2007).

Here, paragraph 6 of the restrictive covenants provided: "No shacks, garages, barns or other out buildings [or] structures of a temporary character shall be used on any lot or parcel at any time.  All structures must be built on a permanent foundation."  CP at 77.  The Harmons argue that because they had removed various temporary structures on their property from time to time in response to the Trust's complaints, the Trust had not established that its fear of an immediate violation of the temporary structures covenant was well-grounded.

However, the Trust submitted numerous photographs of the various shacks, tents, and other temporary structures the Harmons had placed around their property at various times.  The Trust also submitted evidence of the letters it sent to the Harmons requesting they take down the

8

temporary structures to comply with paragraph 6, as well as a drafted complaint. The Harmons appeared to dispute that there were structures on their property that violated the temporary structures covenant. They removed the cattle panel, storage shed, and greenhouse sometime before the lawsuit was filed, but two domestic dog kennels and an above-ground pool remained. This evidence was sufficient to conclude that the Trust had a well-grounded fear that the Harmons would soon violate the temporary structures covenant again.

The Harmons also argue that the Trust failed to prove it would have no adequate remedy at law without the permanent injunction, and that money damages would have been sufficient to compensate the Trust for any resulting loss in property values.

Injunctive relief is not appropriate where the party requesting the relief has a " 'plain, complete, speedy, and adequate remedy at law.' " *Bellevue Square, LLC v. Whole Foods Mkt. Pac. Nw., Inc.*, 6 Wn. App. 2d 709, 716, 432 P.3d 426 (2018), *review denied*, 193 Wn.2d 1024 (2019) (quoting *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 96 Wn.2d 785, 791, 638 P.2d 1213 (1982)). In general, courts have found a remedy at law inadequate in three situations: (1) the injury cannot be compensated by money damages, (2) the damages cannot be ascertained with certainty, and (3) the remedy at law would be inefficient because the injury is continuous in nature. *Bellevue Square*, 6 Wn. App. 2d at 716.

Money damages are sometimes appropriate to compensate a loss in property value. *See Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 210, 995 P.2d 63 (2000). But here, there was no way to determine with certainty what the Harmons' future construction of temporary structures on their property might do to the property values in the rest of the subdivision. In this case, money damages would have been an inadequate remedy.

Accordingly, we hold that the trial court did not abuse its discretion in granting the permanent injunction regarding temporary structures on the Harmons' property.

## C. RECOVERY OF ATTORNEY FEES UNDER THE RESTRICTIVE COVENANTS

The Harmons argue that the Trust was not entitled to recover reasonable attorney fees under paragraph 13 of the restrictive covenants because the Trust did not make a demand for compliance regarding the siding and roofing of the Harmons' barn or the temporary structures on the Harmons' property before filing suit. We agree regarding the violation of the outbuildings covenant but disagree regarding the violation of the temporary structures covenant.

### 1. Failure to Raise Issue in Trial Court

Initially, the Trust argues that we decline to consider the Harmons' argument because they did not raise the issue in the trial court. The Harmons argue that we still should consider this issue under RAP 2.5(a)(2) because the Trust failed to prove sufficient facts upon which the relief of attorney fees could be granted. We agree with the Harmons.

In response to the Trust's requests for attorney fees in the trial court, the Harmons challenged only the reasonableness of the amount of fees requested and did not argue that attorney fees were not recoverable under paragraph 13 of the restrictive covenants. We generally do not consider arguments raised for the first time on appeal. *See* RAP 2.5(a); *Kave v. McIntosh Ridge Primary Rd. Ass'n*, 198 Wn. App. 812, 823, 394 P.3d 446 (2017).

However, RAP 2.5(a)(2) provides that an appellant may raise for the first time on appeal the "failure to establish facts upon which relief can be granted." This exception applies where the proof of particular facts at trial is required to sustain a claim. *Mukilteo Ret. Apts., LLC v. Mukilteo Investors, LP*, 176 Wn. App. 244, 246, 310 P.3d 814 (2013). And the rule can apply to the recovery of attorney fees. *Stedman v. Cooper*, 172 Wn. App. 9, 24-25, 292 P.3d 764 (2012).

10

Here, paragraph 13 stated that, to be entitled to recover attorney fees, the grantor must "demand . . . compliance" with the covenants and the defendants must "fail[] to comply with such demand" before the grantor files suit. CP at 78-79. Therefore, to obtain relief the Trust was required to establish two facts: a demand for compliance and a failure to comply with the demand. The Harmons' argument is that the evidence is insufficient as a matter of law to establish these facts. Therefore, we consider the Harmons' argument for the first time on appeal under RAP 2.5(a)(2).

2.    Failure to Assert Affirmative Defense

The Trust also argues that the Harmons are precluded from arguing that the Trust cannot recover attorney fees based on a failure to demand compliance because both the Harmons' answer and amended answer failed to specifically allege the Trust's failure to make the required pre-suit demands as required by CR 8(c) and CR 9(c). We disagree with the Trust.

The Trust claims that the Harmons' argument that the Trust was required to demand compliance with the covenants constituted both an affirmative defense under CR 8(c) and a denial of a condition precedent under CR 9(c) that was required to be specifically pleaded.

CR 8(c) states that a defendant's answer must affirmatively set forth a number of specified affirmative defenses as well as "any other matter constituting an avoidance or affirmative defense." However, this requirement is not absolute. *Hogan v. Sacred Heart Medical Ctr*, 101 Wn. App. 43, 54-55, 2 P.3d 968 (2000). The purpose of CR 8(c) is to avoid surprise. *Henderson v. Tyrrell*, 80 Wn. App. 592, 624, 910 P.2d 522 (1996). If the failure to plead a defense affirmatively "does not affect the substantial rights of the parties, the noncompliance will be considered harmless." *Mahoney v. Tingley,* 85 Wn.2d 95, 100, 529 P.2d 1068 (1975).

11

CR 9(c) states: "In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. *A denial of performance or occurrence shall be made specifically and with particularity*." (Emphasis added.)

The Trust's complaint "pray[ed]" for reasonable attorney fees under paragraph 13 of the covenants. CP at 7. The Harmons' answer expressly denied that the Trust was entitled to attorney fees, and their amended answer expressly denied the paragraph in which the Trust requested attorney fees. But neither answer expressly identified the failure to comply with the requirements of paragraph 13 as an affirmative defense nor expressly asserted the failure of a condition precedent. And the Harmons did not argue in the trial court that attorney fees were not recoverable under paragraph 13 because the Trust did not demand compliance.

We conclude that compliance with the terms of paragraph 13 was not an affirmative defense that was required to be pleaded specifically. The Trust pleaded that it was entitled to attorney fees under the terms of paragraph 13. Therefore, the Trust had the burden of proving compliance with the requirements of that provision; the Harmons did not have the burden of proving noncompliance as a defense. And the Harmons' answer was sufficient to put the Trust on notice that the Harmons were challenging the recovery of attorney fees under paragraph 13.

We also conclude that CR 9(c) does not apply here. CR 9(c) states that a plaintiff can aver generally that all conditions precedent have been performed. At that point, the defendant must specifically deny such performance. However, here the Trust did not allege that it had performed all conditions precedent, for which it had the burden of proof. Therefore, the Harmons' obligation to specifically deny such an allegation was never triggered.

We conclude that the Harmons are not precluded from arguing that the Trust cannot recover attorney fees based on a failure to demand compliance.

### 3. Paragraph 13 Requirements

A court may award reasonable attorney fees only when such an award is authorized by contract, statute, or recognized ground of equity. *Union Bank, NA v. Blanchard*, 194 Wn. App. 340, 364, 378 P.3d 191 (2016). Paragraph 13, entitled "Enforcement," stated:

> The Grantor . . . shall be entitled to bring any suit or action to enforce these Covenants. Should any suit or action instituted by the Grantor . . . to enforce any of said . . . covenants and restrictions, or to restrain the violation of any thereof, *after demand for compliance therewith or for the cessation of such violation, and failure to comply with such demand,* then and in either of said events . . . *the parties instituting such suit or action shall be entitled to recover attorney's fees in such suit or action.*

CP at 78-79 (emphasis added). In other words, paragraph 13 allowed an award of attorney fees when the grantor instituted an action to enforce the covenants after (1) a demand for compliance and (2) failure to comply with the demand.

#### a. Outbuildings Covenant

The Harmons argue that they did not received a "demand for compliance" regarding their barn's alleged violations of the restrictive covenants because none of the Trust's pre-suit letters addressed the issue of the outbuildings covenant.

Thomas's attorney sent the Harmons two demands for compliance with the covenants in 2015. However, those demands were specifically limited to the Harmons living in a trailer for longer than the covenants allowed and constructing temporary structures. The October letter asked the Harmons to "immediately correct any non-conforming use of the property by promptly removing the trailer and temporary structures from the property." CP at 130. The December

letter stated, "Please immediately correct any and all non-conforming use of the property by promptly removing the trailer and temporary structures from the property." CP at 134.

The Harmons began construction of a pole-barn in October 2015. But neither letter demanded compliance with the outbuildings covenant. And the Trust submitted no other evidence that it made a formal demand for compliance regarding the Harmons' barn.

The Trust argues that both the Harmons' answer and amended answer to the Trust's complaint admitted that the Trust made the required pre-suit demands for compliance with the covenants. But the answers expressly denied that the Harmons had violated any covenants and denied failing to accede to demands to abide by the covenants. The answers also expressly denied that the Trust was entitled to recover attorney fees under paragraph 13. We conclude that these answers cannot fairly be interpreted as admitting that the Trust had made a demand for compliance regarding the outbuildings covenant.

Because the Trust did not demand that the Harmons comply with the outbuildings covenant, the Trust did not satisfy the demand for compliance requirement in paragraph 13. Accordingly, we hold that the trial court erred in awarding attorney fees to the Trust regarding enforcement of this covenant.

>        b.    Temporary Structures Covenant

The Harmons did receive demands for compliance regarding the temporary structures covenant. The October and December letters stated that the temporary structures on the Harmons' property violated the restrictive covenants and asked them to immediately remove temporary structures from the property. Both letters warned that the failure to comply with this demand would result in a lawsuit being filed against them.

The Harmons argue that because the Trust did not respond to Lana Harmon's letter telling the Trust "to clarify these said temporary structures in question," CP at 136, the Harmons did not receive a demand for compliance under paragraph 13 with respect to temporary structures. But paragraph 13 contains no requirement that a demand for compliance be uncontested before the party initiating a suit to enforce the covenants is entitled to attorney fees. That the Harmons disagreed they were violating the restrictive covenants regarding temporary structures does not alter the fact that the Trust sent them a demand for compliance.

We hold that the trial court did not err in ruling that the Trust was entitled to recover attorney fees regarding enforcement of the temporary structures covenant.

4.   Fee Award Against Sunshine Harmon

The Harmons argue that the award of attorney fees under the restrictive covenants against Sunshine Harmon was not appropriate because he was not an owner of the property at issue, nor was he a party to the restrictive covenants. The Trust argues that the Harmons should not be entitled to raise this argument for the first time on appeal.

As stated above, we generally do not consider arguments raised for the first time on appeal. *See* RAP 2.5(a); *Kave*, 198 Wn. App. at 823. Here, the Harmons did not object to the inclusion of Sunshine Harmon as a defendant in the lawsuit or to the amendment of the case caption to replace "John Doe Harmon" with "Sunshine Harmon." Finally, the Harmons did not object to entry of judgment against both Lana and Sunshine Harmon. Accordingly, we decline to consider this argument.

5.   Attorney Fees on Appeal

The Trust requests its attorney fees on appeal under paragraph 13 of the restrictive covenants. This appeal is part of the Trust's suit to enforce the restrictive covenants, for which

15

paragraph 13 allowed the recovery of attorney fees under certain conditions. Based on the court's holdings above, we hold that the Trust is entitled to recover its attorney fees for enforcing the temporary structures covenant but not for the outbuildings covenant.

## CONCLUSION

We decline to address the trial court's order granting partial summary judgment regarding violation of the outbuildings covenant, and we affirm the trial court's entry of the permanent injunction regarding temporary structures. Regarding attorney fees, we reverse the trial court's award of attorney fees to the Trust for enforcement of the outbuildings covenant, but we affirm the trial court's award of attorney fees to the Trust for enforcement of the temporary structures covenant. Finally, we award attorney fees to the Trust on appeal for only the enforcement of the temporary structures covenant.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
SUTTON, A.C.J.

_____
GLASGOW, J.

16